the end of each year the taxpayer determined the percentages to be used in dividing the income of the year. In 1921 and 1922 taxpayer received two-thirds and his son one-third.

During 1922 dividends of $18 were paid on certain stock standing in the name of Lewis Dill. Such dividends were treated as income of the partnership and were so reported in its tax return. The Commissioner has treated such dividends as income of the taxpayer. The dwelling house and the stock, referred to above, were included in the statements of assets and liabilities submitted to banks and others for the purpose of credit.

In 1917 the partnership built a lumber mill. It was of wood construction, except for the boiler room, which was of brick. This mill, together with the boiler, engine, shafting, pulleys, and other machinery, cost $18,000. The taxpayer deducted depreciation at 10 per cent. The Commissioner reduced the depreciation on the brick portion to 3 per cent. The average useful life of this property was 10 years.

Lewis Dill keeps no personal books of account. Capital accounts were carried upon the books of the partnership for each of the partners, showing, in the case of taxpayer's son, the profits left in the business.

### DECISION.

The profit on the sale of the dwelling house and the dividends on the stock should be accounted for as income of the partnership. Depreciation on the lumber mill is allowed at 10 per cent. The deficiency should be computed accordingly. Final determination will be settled on 10 days' notice, under Rule 50.

---

### APPEAL OF SARGENT BARGE LINE, INC.

Docket No. 4035.   Submitted July 15, 1925.   Decided November 18, 1925.

*William Huck, Jr., Esq.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

Before STERNHAGEN, GREEN, and LOVE.

The Commissioner has asserted a deficiency in income and profits taxes for the taxable period July 1 to December 31, 1918, in the sum of $492.25. The deficiency results from the fact that the Commissioner holds the taxpayer affiliated with the Sargent Transportation Line, Inc. The taxpayer contends that the Sargent Transportation Line, Inc., is a personal service corporation and that, therefore, it can not be affiliated with the taxpayer, which both parties agree is a corporation in which capital is a material income-producing factor.

### FINDINGS OF FACT.

For many years prior to July 1, 1918, Donald J. Sargent was engaged in the business of coal transportation in and about New York Harbor. This business was carried on under the name of the Sargent Transportation Line. He started the business with one barge, which he operated personally. Thereafter, as the business grew, he employed others to operate the barge and devoted his entire time and energies to the business. By July 1, 1918, he had accumulated 10 such barges and was doing a substantial business. On that date he decided that his method of conducting his business was unsatisfactory and he caused two corporations to be organized. The first of these was the Sargent Barge Line, Inc., the taxpayer herein, which had an authorized capital of 750 shares of no par value common stock. The second was the Sargent Transportation Line, Inc., which had an authorized capital stock of 100 shares of no par value common stock. All of the stock of both corporations was issued to Sargent.

Pursuant to his plan, all of his individual assets, which were used in the business he had theretofore built up, were transferred to the Sargent Barge Line, Inc., and thereafter all of the physical assets of the business were carried in the name and were the property of that company.

The record does not disclose whether any money was actually paid in to the Sargent Transportation Line, Inc., for the stock issued. It does appear, however, that $1,000 was loaned to the Transportation Line by the Barge Line, and this seems to have constituted its working capital. So far as the record discloses, this company had no physical assets.

Sargent devoted all his time to the operation of both companies with the result that, for all practical purposes, in so far as patrons of the business were concerned, the services rendered were the same as when the business was conducted by him as an individual. Shippers delivered their coal to the railroad piers and notified Sargent to arrange for its transportation to vessels, industrial plants, etc., in and about New York Harbor. The Transportation Line then chartered the barges necessary for the transportation of the coal from the piers to its destination and arranged with the owners of tug boats for the service of their boats in the movement of the barges. In chartering barges preference was always given to those of the Sargent Barge Line and the barges of that company were always used if available and suitable. When the necessity arose, as it frequently did, the barges of other lines were chartered. The average number of barges employed was estimated to be 25; however, in many instances, as many as 100 were used. The barges were chartered by the day or on a tonnage basis and never for an extended period of time.

Sargent conducted all negotiations with the owners of the coal, made the contracts therefor, secured the necessary barges by charter, supervised the movements of the barges and saw to it that they arrived safely at their destination and promptly discharged their cargoes so as to avoid delay in the departure of vessels with the consequent demurrage. In the early history of the business the collections for the services rendered were made by the captains of the barges, but later, when it was found difficult to secure trustworthy individuals to act as captains, it became necessary for the Transportation Line to make its own collections, and this it did through the medium of monthly statements.

In some instances the Transportation Line received a greater compensation for its services than was customarily paid. Those securing the services were willing to make these additional payments because of the efficient service rendered by the Barge Line and the Transportation Line under the management and supervision of Donald J. Sargent.

On the income-tax return filed by the Sargent Transportation Line, Inc., for the taxable period in question, appear the following schedules:

GROSS EARNINGS ON TRANSPORTATION.

| | | |
|---|---:|---:|
| Transportation of coal | $152,328.86 | |
| Less charter cost of boats, towage, etc | 127,689.24 | |
| | | $24,639.62 |

INTEREST RECEIVED.

| | |
|---|---:|
| On bank balances | $73.39 |

ORDINARY AND NECESSARY EXPENSES.

| | |
|---|---:|
| Office salaries | $541.00 |
| Auditing expense | 1,250.00 |
| General expense and outside superintendence | 127.95 |
| Rent | 750.00 |
| Office expense | 759.08 |
| Compensations | 531.80 |
| Legal expense | 597.88 |
| | 4,557.71 |

COMPENSATION OF MEMBERS.

| | |
|---|---:|
| Donald J. Sargent, president, owner entire stock, manager, practically whole time | $5,000.00 |

*Balance sheet as at December 31, 1918.*

Assets:

| | |
|---|---:|
| Cash, in bank | 2,227.44 |
| Petty cash | 250.00 |
| | 2,477.44 |
| Accounts receivable | 29,744.28 |
| | 32,221.72 |

Liabilities:

| | |
|---|---|
| Loan account | $1,000.00 |
| War tax | 1,690.62 |
| Sargent Barge Line, Inc. | 4,618.54 |
| Accounts payable | 6,751.94 |
| Insurance claim (a/c Sargent Barge Line, Inc.) | 8,637.35 |
| Net profit, period 7/1/1918 to 12/31/1918 | 9,523.27 |
| | 32,221.72 |

It appears from the testimony that the amount of $127,689.24, above referred to, was composed in part of the following items:

| | |
|---|---|
| Chartering barges | $94,908.52 |
| Towing | 24,650.21 |
| Stevedoring | 6,855.90 |

The stevedoring charge, above referred to, would be procured at the request of the owners of the coal through O'Connel and O'Pool, boss stevedores, who had their offices with the Sargent Barge Line. In instances where the contract included "trimming in" the coal, this latter service furnished by the stevedores was supervised personally by Sargent. The bills for the stevedoring and trimming services were paid by the Transportation Line and the same amount on monthly statements collected from the parties for whom the service was rendered.

### DECISION.

The determination of the Commissioner is approved.

---

### APPEAL OF CHARLES M. MONROE STATIONERY CO.

Docket No. 950.     Submitted October 8, 1925.     Decided November 18, 1925.

> Temporary conditions limiting use of trade-marks and trade names will not support a deduction for obsolescence or loss of useful value.

*A. Evan Hughes, Esq.*, for the taxpayer.
*Briggs G. Simpich, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the years 1918 and 1919 in an amount less than $10,000. The deficiency arises from the refusal of the Commissioner to permit the taxpayer to deduct $25,000 for the alleged loss of useful value of intangibles for the year 1918. It is not clear from the pleadings and testimony given at the hearing whether